UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DANIEL L. MEEKER,<br><br>  Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>  Defendant. | No. CV-08-039-JPH<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct. Rec. 18, 24.) Attorney Linda J. Mathis represents plaintiff; Special Assistant United States Attorney Lisa Goldoftas represents defendant. The parties have consented to proceed before a magistrate judge. (Ct. Rec. 11.) After reviewing the administrative record and briefs filed by the parties, the court **DENIES** plaintiff's Motion for Summary Judgment and **GRANTS** defendant's Motion for Summary Judgment.

**JURISDICTION**

Plaintiff Daniel L. Meeker (plaintiff) protectively filed for social security income (SSI) and disability insurance benefits (DIB) on March 4, 2004. (Tr. 58-60, 94, 378-80.) Plaintiff alleged an onset date of July 10, 2002. (Tr. 58, 378.) Benefits were denied initially and on reconsideration. (Tr. 27, 34.) Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ Hayward Reed on June 26, 2007. (Tr. 386-418.) Plaintiff was represented by counsel and testified at the hearing. (Tr. 389-405.) Vocational expert Fred Cutler also testified. (Tr. 405-17.) The ALJ denied benefits (Tr. 12-20) and the Appeals Council denied review. (Tr. 5.) The matter is now before this court

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -1

pursuant to 42 U.S.C. § 405(g).

**STATEMENT OF FACTS**

The facts of the case are set forth in the administrative hearing transcripts, the ALJ decisions, and the briefs of plaintiff and the Commissioner, and will therefore only be summarized here.

Plaintiff was born on October 8, 1965 and was 41 years old at the time of the hearing. (Tr. 407.) He obtained a GED and attended college for two years, but did not obtain a college degree. (Tr. 73, 407.) Plaintiff has previously worked as a security guard, auto mechanic and auto parts clerk. (Tr. 105-12, 132.) He last worked for pay in 2002 and that job ended because of pain in his back. (Tr. 389.) In 2003, plaintiff attempted to work for himself by fixing lawn mowers and doing minor repairs, but he testified he could not keep up with the work. (Tr. 396.) Plaintiff says the cause of his pain is degenerative disc disease and severe arthritis in his back. (Tr. 394.) Plaintiff testified that he lies down at least 19 hours every day, can walk only 250-300 feet without stopping, and can stand for only five minutes at a time. (Tr. 390, 392-93.) He also testified that he cannot push or pull and that he has lost a lot of feeling in his fingers. (Tr. 404.)

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler,* 760 F. 2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F. 3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan,* 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze,* 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record

as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Services,* 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

## SEQUENTIAL PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c (a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if his impairments are of such severity that plaintiff is not only unable to do his previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he or she is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -3

impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he or she has performed in the past. If plaintiff is able to perform his or her previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity ("RFC") assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his or her residual functional capacity and age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his or her previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ALJ'S FINDINGS**

At step one of the sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since July 10, 2002, the alleged onset date. (Tr. 14.) At step two, he found Plaintiff has the following severe impairments: degenerative disk disease and degenerative joint disease. (Tr. 15.) At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that met or medically equals an impairment listed in 20 C.F.R. Part 404, Subpt. P, App. 1.

(Tr. 664.) The ALJ then determined:

> [C]laimant has the residual functional capacity to perform light work. The claimant can lift 20 pounds occasionally and frequently lift or carry 10 pounds. The claimant can sit, stand, or walk for six hours in an eight-hour workday with normal breaks. The claimant has no push or pull limitations. He could occasionally climb ramps or stairs, balance, stoop, kneel, crouch or crawl, but he should never climb ladders, ropes or scaffolds.

(Tr. 16.) At step four, the ALJ found plaintiff was capable of performing past relevant work as a security guard at the light exertion level. (Tr. 19.) The ALJ also noted there is a wide range of other light exertion work plaintiff could perform. (Tr. 19.) The ALJ concluded plaintiff has not been under a disability, as defined in the Social Security Act, from July 10, 2002 through the date of the decision.

**ISSUES**

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Specifically, plaintiff asserts the ALJ erred by: (1) finding plaintiff capable of performing past work; (2) failing to properly evaluate plaintiff's RFC; (3) improperly rejecting plaintiff's testimony; and (4) improperly rejecting a statement of plaintiff's treating physician. (Ct. Rec. 21 at 1-8.) Defendant asserts the ALJ properly: (1) found plaintiff could return to past relevant work; (2) determined plaintiff's RFC;(3) found plaintiff not entirely credible; and (4) considered the medical evidence. (Ct. Rec. 25 at 7-21.)

**DISCUSSION**

**1.     Credibility**

Plaintiff argues the ALJ erred by rejecting plaintiff's testimony without providing legally sufficient reasons and based on mischaracterizations of the evidence. In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 4416.929.

Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -5

Cir. 1991)   If there is evidence of a medically determinable impairment likely to cause an alleged symptom and there is no evidence of malingering, the ALJ must provide specific and cogent reasons for rejecting a claimant's subjective complaints. *Id.* at 346.  The ALJ may not discredit pain testimony merely because a claimant's reported degree of pain is unsupported by objective medical findings. *Fair*, 885 F.2d at 601.  The following factors may also be considered: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) claimant's daily living activities; (4) claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition. *Thomas*, 278 F.3d at 958.

 If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Morgan v. Apfel*, 169 F.3d 599, 601-02 (9th Cir. 1999).  In the absence of affirmative evidence of malingering, the ALJ's reasons must be "clear and convincing." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th Cir. 2007); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *Morgan*, 169 F.3d at 599.  The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)(citation omitted).

In this case, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible. (Tr. 17.)  The ALJ then cited a number of reasons for the negative credibility finding.

First, the ALJ pointed out that plaintiff did not file a worker's compensation claim or seek emergency room treatment for the initial workplace injury and concluded plaintiff's injury may not have been as traumatic as alleged. (Tr. 17.)  Although plaintiff did not immediately seek emergency room treatment, plaintiff did obtain an appointment at his physician's office on the day of the injury and took the rest of the day off work. (Tr.  187.)   This indicates an injury requiring immediate attention.  Thus, the lack of emergency room treatment does not necessarily indicate plaintiff's injury

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -6

was not as severe as alleged.  Plaintiff explained that he did not file a worker's compensation claim because he thought he just pulled a muscle and it was not necessary at the time.  (Tr. 395.)  Within a month of the injury, plaintiff told a physician assistant that, "He no longer wants this billed to L&I and wants his regular insurance to take over."  (Tr. 190.)  He later mentioned to a physical therapist that he had some mid-back pain before his injury so he did not file an L&I claim.  (Tr. 309.)  Although it is not clear why plaintiff chose not file an L&I claim, none of these statements suggest plaintiff's injury was not as traumatic as alleged.  The ALJ's first reasons for discounting plaintiff's credibility are not supported by the evidence and are not proper considerations.

   The ALJ also noted that plaintiff's attempt at self-employment less than a year after the injury "is indicative that the claimant could perform more than sedentary work."  (Tr. 17.)  Plaintiff testified that he tried working for himself fixing lawnmowers and doing minor repairs and that he "couldn't keep up with that."  (Tr. 396.)  Plaintiff filed an income tax return for 2003 evidencing gross income of $4,785 from his own repair business.  (Tr. 63.)  The ALJ found this was "likely" an unsuccessful work attempt.  (Tr. 14.)  "It does not follow from the fact that a claimant tried to work for a short period of time and, because of his impairments, *failed*, that he did not then experience pain and limitations severe enough to preclude him from *maintaining* substantial gainful employment."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007.)  The ALJ seems to imply that since the work attempt was at greater than the sedentary level, claimant's abilities must exceed the sedentary level.  However, plaintiff's unsuccessful work attempt should not be a factor in the credibility determination[1] and were improperly considered by the ALJ.

   Although the foregoing factors were improperly considered by the ALJ in making the credibility determination, the ALJ also gave a number of other properly supported reasons which justify the negative credibility finding.  As long as there is substantial evidence supporting the ALJ's conclusions on credibility and the error does not negate the validity of the ALJ's ultimate credibility

---

[1] A work attempt of less than nine months is not evidence that disability has ended.  *See* 20 C.F.R. § 404.1592.  The record does not establish the length of time plaintiff was self-employed, but the ALJ's finding that the small engine repair self-employment was "likely" an unsuccessful work attempt adequately establishes it as an unsuccessful work attempt.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -7

conclusion, the error is harmless and does not warrant reversal. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). In this case, the ALJ gave two improper reasons for rejecting plaintiff's credibility, but also listed several other acceptable reasons justifying his credibility determination.

Another reason given by the ALJ in rejecting plaintiff's credibility is his conclusion that plaintiff is active, despite his claim that he has to lie down for 19 hours a day. (Tr. 17.) Activities of daily living are a relevant consideration in making a credibility determination. *Burch*, 400 F.3d at 681. However, it is well-established that a claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits, *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). The ALJ cited a function report completed by plaintiff in which plaintiff reported no problem with personal care, making complete meals from scratch at times, the ability to put clothes in the washer and dishes in the dishwasher, shopping several times a week, going outside once or twice a day, normal activities with his children, and visiting with family and friends several times per week.[2] (Tr. 17-18, 97-101.) The ALJ also cited numerous notes by plaintiff's treating physician that plaintiff had "normal activity and energy level." (Tr. 18, 222, 232, 246, 251, 259, 261, 264, 272, 323, 327, 331, 333, 337, 339, 351, 359.) The ALJ's interpretation of plaintiff's activity is rational, and the ALJ's interpretation must be upheld when the evidence is susceptible to more than one rational interpretation.. *See id* at 680-81; *Magallenes*, 881 F.2d at 750. Thus, the ALJ properly considered plaintiff's activity level as one factor in the negative credibility determination.

The ALJ also pointed out plaintiff has not followed through with recommended retraining and physical therapy. (Tr. 17.) Medical treatment received to relieve pain or other symptoms is a relevant factor in evaluating pain testimony. 20 C.F.R. §§ 416.929(c)(3)(iv) and 416.929.(c)(3)(v). The ALJ

---

[2]The ALJ indicated treatment notes confirm plaintiff has been mowing his lawn. (Tr. 18.) The record is not cited in support of this assertion, and the court is unable to locate a reference to plaintiff mowing his lawn in the record. Regardless, the ALJ's point that plaintiff is more active than alleged is adequately supported with references to the record and any error is harmless. *See Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007); *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990); *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380 (9th Cir. 1984).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -8

Case 2:08-cv-00039-JPH    Document 26    Filed 01/05/10

is permitted to consider the claimant's lack of treatment in making a credibility determination. *Burch*, 400 F.3d at 681. An individual's statements may be less credible if "the individual is not following the treatment as prescribed and there are no good reasons for this failure." S.S.R. 96-7p. Shortly after plaintiff's injury, it was recommended that plaintiff attend physical therapy, but he did not do so. (Tr. 188, 189.) Dr. Weir, a treating physician, discussed physical therapy with plaintiff in December 2002, but noted that "he wants to wait." (Tr. 198.) In July 2003, Dr. Weir reviewed the results of a physical capacities exam with plaintiff, noting "He has chronic lumbar and thoracic strain. Physical therapy was recommended." (Tr. 205.) In November 2003, plaintiff did not want to attend physical therapy but said he would if it would help him obtain benefits. (Tr. 206.) In December 2003, Dr. Weir mentioned that he wrote a note stating plaintiff was unable to work and, "He needs to start PT." (Tr. 207.) There is no evidence that plaintiff followed recommendations for physical therapy until July 2005, when plaintiff underwent a physical therapy evaluation. (Tr. 309.) The physical therapist noted signs and symptoms consistent with mid back pain from strains and sprains in thoracic spine and rib cage with underlying significant low back pain and indicated the prognosis was good with treatment. (Tr. 309.) However, plaintiff evidently canceled three scheduled physical therapy appointments due to a lack of transportation. (Tr. 310.) Thus, plaintiff never followed through with physical therapy despite the recommendations of several examiners. This was properly considered by the ALJ in making the credibility determination.

The ALJ further noted Dr. Weir's records indicate a vocational counselor recommended plaintiff go back to school and plaintiff was amenable to doing so. (Tr. 17.) In April 2003, Dr. Weir indicated that plaintiff was evaluated by a vocational counselor who recommended he go back to school, but DSHS was not willing to pay for plaintiff's education. (Tr. 201.) The next month, Dr. Weir noted that plaintiff was going to attempt to vocational training "in some type of sedentary capacity." (Tr. 202.) The ALJ pointed out that at the hearing, plaintiff denied recollection of any recommendation for retraining. (Tr. 17, 397.) In making a credibility evaluation, the ALJ may rely on ordinary techniques of credibility evaluation. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). Plaintiff's failure to follow through with vocational retraining and his failure to recall that recommendation could be reasonably interpreted to reflect poorly on his credibility. The ALJ did not

err by considering the retraining evidence.

As an additional factor in the credibility determination, the ALJ cited plaintiff's testimony regarding his gait and characterized it as "grossly exaggerated." (Tr. 18.) One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record. S.S.R. 96-7p. Plaintiff testified that he had not walked with normal gait since July 10, 2002. (Tr. 399.) Although plaintiff reportedly walked with a limp in June 2003, the ALJ pointed out plaintiff's treating physician recorded a normal gait on numerous occasions. (Tr. 238, 254, 259, 273, 280, 321, 323, 325, 327, 331, 333, 335, 337, 339, 351, 360.) The inconsistency between plaintiff's testimony and Dr. Stoop's records was reasonably interpreted by the ALJ to reflect negatively on plaintiff's credibility.

Finally, the ALJ pointed out there is very little objective evidence supporting plaintiff's claims. (Tr. 18.) While a claimant's pain testimony may not be rejected solely because it is unsupported by objective medical findings, *Fair*, 885 F.2d at 601, objective medical evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques is a useful indicator in making reasonable conclusions about the intensity and persistence of symptoms. 20 C.F.R. § 416.929(c)(2). The ALJ pointed out that plaintiff's treating physician, Dr. Weir, noted in November 2003 that plaintiff's "subjective complaints of pain and disability are out of proportion to objective findings." (Tr. 18, 206.) It was noted in January 2004 that plaintiff's lumbar spine has dramatically decreased range of motion and plaintiff experienced pain with straight leg raises bilaterally. (Tr. 18, 208.) Elsewhere in the record, tenderness and reduced flexion are reported, but the ALJ points out that objective measurements of reduced flexion are not recorded. (Tr. 18, 240-41, 262, 265, 345.) However, the ALJ found that overall, despite plaintiff's subjective complaints, examination notes mostly show no objective indications of muscle or joint pain, weakness, swelling, inflammation, restriction of movement, atrophy, radiculopathy, instability, or backache. (Tr. 18, 202, 206-09, 222-93.) Furthermore, the ALJ noted that other objective evidence reveals only mild findings. (Tr. 18.) A nerve conduction study in March 2003, shows severe nerve impairment at S1 and marked to severe impairment at L5 likely due to a herniated disk in the lumbar region. (Tr. 261, 294.) However, the ALJ pointed out an MRI in August 2004 shows only mild degenerative changes

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -10

in the lumbar spine. (Tr. 18, 288.) The MRI also shows no significant neural foraminal encroachment and no nerve root compression. (Tr. 288.) Where the evidence conflicts, it is the ALJ's duty to resolve the ambiguity. *See Morgan v. Commissioner*, 169 F.3d 595, 599-600 (9th Cir. 1999).

The ALJ relied on a number of factors in making the credibility determination. The ALJ cited plaintiff's activity level, failure to follow through with physical therapy or vocational rehabilitation, the inconsistency between plaintiff's treating physician's notes regarding gait and plaintiff's own report, and little supporting objective evidence as the basis for the credibility finding. The ALJ's conclusions are reasonable and supported by the evidence. It is not the role of the court to second-guess the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The factors improperly considered by the ALJ constitute harmless error because the ALJ cited other reasons constituting substantial evidence.

**2.    Dr. Stoop**

Plaintiff argues the ALJ erred in giving little weight to the opinion of Dr. Stoop, a treating physician. (Ct. Rec. 21 at 8.) In evaluating medical or psychological evidence, a treating or examining physician's opinion is entitled to more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding a treating or examining physician's opinion. *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989).

The opinion of a non-examining physician cannot by itself constitute substantial evidence that

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -11

justifies the rejection of the opinion of either an examining physician or a treating physician. *Lester*, 81 F.3d at 831, citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990). However, the opinion of a non-examining physician may be accepted as substantial evidence if it is supported by other evidence in the record and is consistent with it. *Andrews*, 53 F.3d at 1043; *Lester*, 81 F.3d at 830-31. Cases have upheld the rejection of an examining or treating physician based on part on the testimony of a non-examining medical advisor; but those opinions have also included reasons to reject the opinions of examining and treating physicians that were independent of the non-examining doctor's opinion. *Lester*, 81 F.3d at 831, citing *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989) (reliance on laboratory test results, contrary reports from examining physicians and testimony from claimant that conflicted with treating physician's opinion); *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995) (rejection of examining psychologist's functional assessment which conflicted with his own written report and test results). Thus, case law requires not only an opinion from the consulting physician but also substantial evidence (more than a mere scintilla but less than a preponderance), independent of that opinion which supports the rejection of contrary conclusions by examining or treating physicians. *Andrews*, 53 F.3d at 1039.

      Dr. Stoop, a treating physician, opined that plaintiff is totally and completely disabled from gainful employment. (Tr. 369.) In June 2007, he noted that plaintiff has "undergone numerous tests that consistantly [sic] show Degenerative disc and joint disease in the lumbar spine." (Tr. 369.) Dr. Stoop opined that plaintiff could lift or carry ten pounds occasionally and less than ten pounds frequently. He indicated that plaintiff is able to stand or walk less than two hours in an 8-hour workday and sit less than six hours in an 8-hour workday. (Tr. 370-71.) Dr. Stoop also indicated plaintiff's ability to push or pull is limited in both the upper and lower extremities. The state reviewing physician, Dr. Platter, assessed less severe limitations which contradict Dr. Stoop's opinion. (Tr. 313-20.) Dr. Platter found plaintiff could lift or carry 10 pounds frequently and 20 pounds occasionally, can sit, walk or stand for six hours in an eight-hour workday, and has unlimited ability to push or pull. (Tr. 314.) Thus, the ALJ was required to provide specific, legitimate reasons supported by substantial evidence in rejecting Dr. Stoop's opinion.

      The ALJ provided three reasons for rejecting Dr. Stoop's opinion. First, the ALJ determined

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -12

Dr. Stoop did not have substantial office notes with objective findings that support his opinion of disability. (Tr. 19.) A physician's opinion may be rejected if it is unsupported by the physician's treatment notes. *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003). Furthermore, a physician's opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Fair*, 885 F.2d at 604. As noted above, Dr. Stoop made regular notes that plaintiff has a normal gait and at times recorded no objective indications of muscle or joint pain, weakness, swelling, inflammation, restriction of movement, atrophy, radiculopathy, instability, or backache. (E.g., Tr. 202, 206-09, 222, 240, 251.) Plaintiff did regularly report tenderness and pain, but Dr. Stoop recorded virtually no findings not based on plaintiff's self-report. Thus, the ALJ reasonably concluded Dr. Stoop's treatment notes do not support his opinion.

Second, the ALJ noted Dr. Stoop based his opinion of disability on the MRI dated August 25, 2004. (Tr. 19.) Dr. Stoop indicated the MRI from August 2004 shows the extent of plaintiff's degenerative disc disease/degenerative joint disease and opined that it is the limiting factor for most of plaintiff's daily activity and creates significant symptoms. (Tr. 369.) The ALJ pointed out that the MRI does not support Dr. Stoop's opinion because it shows only mild degenerative changes in the lumbar spine without focal disk protrusion or spinal stenosis, no significant neural foraminal encroachment, and no nerve root compression. (Tr. 288.) Dr. Platter, the reviewing physician, also reviewed the 2004 MRI[3] and Dr. Stoop's notes and pointed to evidence of mild degenerative changes revealed by the MRI and satisfactory range of motion, adequate strength, normal stability, deep tendon reflexes 2+/4 and symmetrical, and sensation normal to touch, pinprick and vibration in support of his opinion that plaintiff was not as limited as Dr. Stoop opined. (Tr. 320.) The ALJ gave

---

[3]Dr. Platter noted "MRI's shows [sic] mild degenerative changes L-spine, T-Spine shows mild R paracentral disk herniation at T-9." (Tr. 320.) The 2004 MRI indicated mild degenerative changes in the lumbar spine. Records from a previous application indicate a May 2000 MRI revealed a thoracic spine disc bulge warranting no treatment. (Tr. 145.) None of the records after 2000 reference the 2000 MRI or thoracic disc herniation.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -13

significant weight to Dr. Platter's opinion. (Tr. 18.) The ALJ's interpretation of the MRI is supported by the evidence and constitutes a specific, legitimate reason for rejecting Dr. Stoop's opinion.

Lastly, the ALJ noted that plaintiff's activities do not support Dr. Stoop's assertion that plaintiff is not able to push or pull with his upper and lower extremities. (Tr. 19.) The ALJ cites plaintiff's report that he grocery shops, and concludes that plaintiff is able to push or pull a grocery cart with his upper extremities to an extent inconsistent with . (Tr. 19, 100-01.) However, plaintiff reported grocery shopping several times each week for 15-20 minutes, consistent with small loads of groceries, not necessarily requiring pushing and pulling of a heavy shopping cart. (Tr. 100.) Furthermore, plaintiff also noted that he always takes his children with him if he is planning to buy more than a few items, so they can help with lifting and carrying. (Tr. 101.) The ALJ's conclusion that plaintiff is regularly pushing and pulling a grocery cart is conclusory and is not supported by the evidence in the record.

The ALJ also noted plaintiff admits to driving a car, but the vocational expert testified that an inability to push or pull with the lower extremities would preclude plaintiff from being able to drive. (Tr. 19, 391, 408.) The vocational expert stated, "Well, theoretically in terms of [an inability to push/pull with] the lower extremities, it would eliminate any types of driving or jobs involving manipulation of foot controls." (Tr. 408.) The vocational expert did not say plaintiff would be physically unable to drive with a limitation on pushing and pulling with the lower extremities, he simply opined that an individual without lower extremity pushing and pulling would not be able to sustain employment in jobs requiring driving or manipulation of foot controls. The record does not reflect how much driving plaintiff engages in and the vocational expert did not elaborate upon how much driving would be required in an occupation requiring driving to sustain employment. The vocational expert's testimony on this issue does not constitute substantial evidence that plaintiff could not drive at all if he was as limited as is claimed .

The ALJ erred because the last reason for rejecting Dr. Stoop's opinion is not supported by substantial evidence. However, the error is harmless because the ALJ cited other legally valid specific, legitimate reasons supported by substantial evidence for rejecting Dr. Stoop's opinion. As

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -14

long as there is substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination, the error is harmless. *See Carmickle v. Comm'r, Soc. Sec. Admin*, 533 F.3d 1155, 1162 (9th Cir. 2008); *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Batson v. Comm'r Soc. Sec. Admin*, 359 F.3d 1190, 1195-97 (9th Cir. 2004). Here, the ALJ's determination that Dr. Stoop's opinion is not supported by his office notes or the objective evidence is a reasonable interpretation of the evidence which supports a legally sufficient rejection of the opinion.

**3.    Residual Functional Capacity**

Plaintiff argues the ALJ erred by improperly evaluating his residual functional capacity. (Ct. Rec. 21 at 4.)  The ALJ must examine a claimant's residual functional capacity and the physical and mental demands of the claimant's past relevant work at step four of the sequential process.  20 C.F.R. § 404.1520(e).  RFC is what an individual can still do despite his or her limitations.  S.S.R. 96-8p. Regulations require the ALJ to undertake a "function-by-function" analysis of the claimant's capacity to work according to exertional categories.  The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. §§ 404.1545 and 416.945.  In this case, only physical limitations are at issue.

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 C.F.R. §§ 404.1545(b), 416.945(b).

Plaintiff argues the ALJ failed to assess whether plaintiff is capable of working on a regular and continuing basis.  As noted by defendant, the ability to work on a regular and continuing basis need not be a specific finding but may be subsumed in the RFC finding.  *Frank v. Barnhart*, 326 F.3d 618, 621 (5th Cir. 2003); *Perez v. Barnhart*, 415 F.3d 457, 466 (5th Cir. 2005).  Plaintiff cites as evidence his own testimony that he spends most of the day lying down in a recliner, which was properly discredited by the ALJ.  (Ct. Rec. 21 at 4, Tr. 17.)  Furthermore, there is no evidence in the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -15

record that has not been properly rejected by the ALJ suggesting plaintiff cannot work on a regular and continuing basis. To the contrary, the physician assistant who initially examined plaintiff indicated he could return to work (Tr. 188-89); Dr. Weir's notes imply plaintiff should be able to engage in vocational training and physical therapy (Tr. 201, 202, 204); and the physical therapist who evaluated plaintiff indicated his prognosis with treatment was good. (Tr. 309.) The ALJ's rejection of plaintiff's testimony, his finding that plaintiff is more active than alleged, and the finding that plaintiff is capable of doing light work are adequate indication that the ALJ considered and concluded that plaintiff can work on a regular and continuing basis.

Plaintiff further argues that the ALJ did not adequately discuss the evidence supporting the RFC finding and the conclusion that plaintiff can do light work. (Ct. Rec. 21 at 4.) Plaintiff asserts that the ALJ's discussion of plaintiff's activities of daily living does not demonstrate how plaintiff has the ability to perform light exertion on a regular and continuous basis. (Ct. Rec. 21 at 4-5.) S.S.R. 96-8p provides that the RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and nonmedical evidence. The ALJ cited plaintiff's reported activities of daily living to demonstrate he is more active than expected for someone who claims to lie down for 19 hours a day. (Tr. 17.) Furthermore, the medical evidence of a normal activity and energy level is indicative of the ability to work on a regular and continuing basis. (Tr. 18.) The ALJ's discussion of plaintiff's ability to do light work includes the credibility analysis, consideration of the medical records including Dr. Weir's and Dr. Platter's opinions and review of the objective evidence. (Tr. 18-19.) The primary evidence of an inability to work on a regular and continuous basis is plaintiff's own testimony which was discredited by the ALJ, and Dr. Stoop's opinion which the ALJ determined to be inadequately supported. Based on the foregoing, the ALJ adequately discussed the evidence and the determination that plaintiff is able to perform light exertion work on a regular and continuing basis.

Plaintiff also argues the RFC determination is insufficient because the ALJ failed to consider all of plaintiff's impairments, even those that are not severe. (Ct. Rec. 21 at 6.) "In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" S.S.R. 96-8p. Specifically, plaintiff argues limitations

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -16

associated with carpal tunnel syndrome should have been included in the RFC determination. (Ct. Rec. 21 at 6.) In December 2004, plaintiff underwent a nerve conduction study for evaluation of possible carpal tunnel syndrome. (Tr. 283.) The summary of findings indicates, "The left and right median sensory response amplitudes are low. This finding is consistent with left and right median sensory neuropathy with axonal loss. Clinical correlation required to localize. This is a normal left and right ulnar nerve conduction study." (Tr. 283.) Further testing in March 2005 resulted in a finding of mild carpal tunnel syndrom. (Tr. 220.) Dr. Britt prescribed wrist splints to wear each night. (Tr. 220.) Plaintiff testified that insurance would not pay for the wrist splints and that he could not afford to purchase them. (Tr. 402.) The ALJ pointed out that although plaintiff testified that he could not afford to purchase wrist braces, he never investigated the cost, suggesting his carpal tunnel syndrome is not particularly severe or limiting. (Tr. 15, 402-03.) There has been no other treatment for carpal tunnel syndrome and since March 2005, there has been no evidence of any deficits in plaintiff's hands or wrists. (Tr. 15.) There is no evidence of work-related limitations due to carpal tunnel syndrome in the record. For these reasons, the ALJ's finding that plaintiff's carpal tunnel syndrome is not severe and does not create any limitations not included in the RFC finding is supported by the record.

**4.     Past Relevant Work**

Plaintiff argues the ALJ erred by finding that plaintiff was capable of performing past relevant work as a security guard at the light exertional level. (Ct. Rec. 21 at 1.) First, plaintiff argues his past work as a security guard was not "substantial gainful activity" under S.S.R. 82-62 and was therefore not "past relevant work." (Ct. Rec. 21 at 2.) Past relevant work is work that was "done within the last 15 years, lasted long enough for you to learn to do it, and was substantial gainful activity." 20 C.F.R. §§ 404.1565(a), 416.965(a). Substantial gainful activity is work activity that "involves doing significant physical or mental activities" on a full- or part-time basis, and "is the kind of work usually done for pay or profit." 20 C.F.R. §§ 404.1572, 416.972. Generally, if a claimant works for substantial earnings as described in the regulations, the work is found to be substantial gainful activity. 20 C.F.R. §§ 404.1574(a), 416.974(a). For work from January 1990 to June 1999, monthly earnings of $500 is substantial gainful activity under the regulations. 20 C.F.R. §§ 404.1574(b),

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -17

416.974(b).

Plaintiff worked as a security guard for four months in 1994, earning $3,116. (Tr. 47-48, 105.) As defendant calculates, the monthly average for plaintiff's security guard work in 1994 is $779 per month (Ct. Rec. 25 at 19), and is therefore substantial gainful activity. Plaintiff erroneously averages his earning as a security guard over the entire year, created a distorted calculation of plaintiff's monthly earnings as a security guard. (Ct. Rec. 21 at 2.) Based on earnings, the ALJ properly determined plaintiff engaged in past relevant work as a security guard.

Plaintiff also argues the ALJ did not perform the required functional analysis of his capabilities by comparing them with those required for past relevant work. (Ct. Rec. 21 at 2.) In order to find a claimant not disabled at step four, he or she must be able to perform either (1) the actual functional demands and job duties of a particular past relevant job; or (2) the functional demands and job duties of the occupation as generally required by employers throughout the national economy. *Pinto v. Massanari*, 249 F.3d 840, 844-45 (9th Cir. 2001). Although the burden of proof is on the claimant at step four, the ALJ still has the duty to make the requisite factual findings to support his conclusion. S.S.R. 82-62. Here, the ALJ found plaintiff could do past relevant work as a security guard at the light exertion level. (Tr. 19.) Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. 20 C.F.R. 404.1567(b). Plaintiff testified that his work as a security guard involved walking or standing the full shift and carrying a 15-pound punch clock. (Tr. 404.) Plaintiff argues his testimony that he carried a time clock weighing approximately15 pounds excludes him from being able to perform past relevant work as a security guard.[4]

The ALJ adopted the vocational expert's analysis on the work-ability issue. (Tr. 19.) At the hearing, the vocational expert agreed that a hypothetical person with the abilities indicated by

---

[4] It is noted that the work history report completed by plaintiff on May 16, 2005 references two security guard positions involving carrying a punch clock. (Tr. 106, 108.) For both positions, plaintiff indicated that the heaviest weight lifted and the weight frequently lifted was less than ten pounds. (Tr. 106, 108.)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -18

plaintiff's RFC could perform plaintiff's past relevant work as a security guard. (Tr. 409.) The vocational expert qualified his answer by saying:

> [N]ot necessarily as performed in all of the situations. The gentleman's work history as a security guard suggested there were some environments he worked in where he had to do more than light work. But the security guard position in some of the areas he worked in and in general would be considered light, predominantly working on one's feet being the predominant physical exertional characteristic. There's really fairly insignificant lifting.

(Tr. 409.) The ALJ noted that the vocational expert explained that plaintiff had worked in more than one security guard position, and at least one of the security guard positions he worked was consistent with plaintiff's residual functional capacity described in the hypothetical question. (Tr. 19, 409.) It is also noted that even if the vocational expert and the ALJ misconstrued the exertion required in plaintiff's past relevant work as a security guard, the vocational expert testified that security guard work as generally performed is light work and generally involves insignificant lifting. Thus, the analysis of plaintiff's past relevant work as generally performed adequately meets the *Pinto* requirement. *See also* S.S.R. 82-61.

Even if the ALJ erred on the past relevant work issue, the vocational expert testified, and the ALJ found his testimony persuasive, that there is a wide range of other light exertion work in addition to several unskilled sedentary jobs plaintiff could perform. (Tr. 19, 410.) Any error made by the ALJ at step four would constitute harmless error because the ultimate nondisability outcome would not change even if plaintiff could not perform past relevant work. *See Stout v. Commissioner, Social Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006); *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005); *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990) (where corrected error does not change the outcome, the error is harmless). An alternative analysis at step five reveals evidence that other work is available in the national economy that plaintiff could perform. Thus, the ALJ's determination of nondisability is supported by substantial evidence.

# CONCLUSION

Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision is supported by substantial evidence and is not based on error.

Accordingly,

**IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment **(Ct. Rec. 24)** is **GRANTED.**

2. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 18)** is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for plaintiff and defendant. Judgment shall be entered for defendant and the file shall be **CLOSED**.

DATED January 5, 2010

                                   S/ JAMES P. HUTTON
                                  UNITED STATES MAGISTRATE JUDGE